UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THE SHERWIN-WILLIAMS COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:12CV02148 ERW |
| ) | |
| NOVAK'S COLLISION CENTER, INC. and ) | |
| CHARLES NOVAK ) | |
| ) | |
| Defendants, ) | |
| ) | |
| vs. ) | |
| ) | |
| DANNY SOAIB, ) | |
| ) | |
| Third-Party Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiff The Sherwin-Williams Company's Motion to Dismiss Defendants' Counterclaim [ECF No. 29].

**I.     BACKGROUND**

This litigation arises out of a dispute between Plaintiff The Sherwin-Williams Company (Sherwin-Williams) and Defendants Novak's Collision Center, Inc. (NCC) and Charles Novak.

On or about January 1, 2012, NCC, a corporation engaged in the business of painting and repairing automobiles, entered into a supply agreement with Sherwin-Williams, a company engaged in the business of selling automotive paints, coatings and related products.  Under the supply agreement, NCC agreed to exclusively use Sherwin-Williams automotive paints, coatings, and related products to meet its requirements, starting January 1, 2012 until net sales reached $461,000.00.  Additionally, Sherwin-Williams agreed to pay an advance payment of $90,000.00,

which it made by check dated January 24, 2012.  The supply agreement further dictated Sherwin-Williams would sell NCC the required products at a discount for the duration of the contract.

On or about January 13, 2012, Novak, the president of NCC, entered into a written guaranty, wherein he personally guaranteed payment and performance of NCC's obligations under the supply agreement.  Pursuant to the guaranty, Novak agreed to become personally liable to Sherwin-Williams if NCC breached the supply agreement.

The parties agree NCC performed its obligations under the supply agreement from January 2012 through September 2012.  However, Sherwin-Williams claims, sometime in September 2012, it learned NCC installed a competitive line of paint products and discontinued purchasing all its requirements from Sherwin-Williams.  In November 2012, Sherwin-Williams brought suit, asserting breach of contract claims against NCC, pursuant to the supply agreement, and Novak, pursuant to the guaranty.  On April 30, 2013, Defendants filed three counterclaims, naming Sherwin-Williams as counter-defendant, and adding as a third-party defendant Danny Soaib, an Area Sales Manager employed by Sherwin-Williams.  Sherwin-Williams filed its Motion to Dismiss Defendants' Counterclaim, which is the subject of this Memorandum and Order.

## II.    WELL-PLEADED FACTS

The Court accepts as true the following well-pleaded facts alleged in Defendants' Counter Claim/Third Party Complaint [ECF No. 23].  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

In January 2012,[1] Novak advised Soaib he would not renew the supply agreement, because he had experienced problems with Sherwin-Williams's products and services.  Novak further advised Soaib he wanted the ability to leave the new supply agreement if he so chose, but he was concerned

---

[1]The Counter Claim/Third Party Complaint does not state a specific day in January 2012 for the events at issue.

Sherwin-Williams would sue him. Soaib promised Novak that Defendants would not sue if Novak cancelled the contract, because Defendants were considered "a little guy." Novak warned Soaib "that he had better not be lying." [ECF No. 23 at ¶ 13]. Defendants claim Soaib further assured Novak that he could leave the contract without facing a lawsuit.[2]

Defendants and Sherwin-Williams encountered problems in their subsequent dealings. Specifically, while Defendants requested water-based paint, Sherwin-Williams only provided solvent paint. Sherwin-Williams failed to provide any technical support to correct these problems. On numerous occasions, Novak advised Sherwin-Williams and Soaib that they were in breach of the supply agreement, but no corrective action was taken.

Defendants claim they could not consistently and effectively use the solvent paint provided by Sherwin-Williams, and Defendants did not purchase solvent paint from any other supplier. Defendants say they had purchased over $70,000.00 of product from Sherwin-Williams. Additionally, they claim they lost customers and revenue "because of the actions of Sherwin-Williams and . . . Soiab [sic]." [ECF No. 23 at ¶ 27].

Based on these allegations, Defendants assert that (1) Soaib and Sherwin-Williams violated the Missouri Merchandising Practices Act (MMPA); (2) Soaib and Sherwin-Williams engaged in fraudulent misrepresentation; and (3) Soaib and Sherwin-Williams engaged in negligent misrepresentation. Sherwin-Williams now moves the Court to dismiss these counterclaims for failure to state a claim upon which relief can be granted.

---

[2]The Counter Claim/Third Party Complaint does not state whether Defendants entered the supply agreement. It does, however, continue to reference the supply agreement in later allegations.

### III.     LEGAL STANDARD

Under Federal Rule of Civil Procedure (FRCP) 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The notice pleading standard of FRCP 8(a)(2) requires a plaintiff to give "a short and plain statement showing that the pleader is entitled to relief." To meet this standard and to survive a FRCP 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. at 678 (internal quotations and citation omitted). This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Furthermore, courts must assess the plausibility of a given claim with reference to the plaintiff's allegations as a whole, not in terms of the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Group*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (internal citation omitted). This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

"While a complaint attacked by a [FRCP] 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alterations and citations omitted); *see also Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'") (quoting Fed. R. Civ. P. 8(a)(2)). Nevertheless, although the "plausibility standard requires a plaintiff to show at the pleading stage

4

that success on the merits is more than a sheer possibility," it is not a "probability requirement." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (citing *Iqbal*, 556 U.S. 678). As such, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely," *id.* (quoting *Twombly*, 550 U.S. at 556) (internal quotations omitted), provided that the complaint contains sufficient facts to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

In sum, these considerations suggest a two-step analysis under which the court may first (1) identify whether the complaint contains pleadings that are "more than conclusions," and that the court can therefore treat as factual allegations entitled to "the assumption of truth," and if it does, (2) "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

A party who alleges fraud must also meet the heightened pleading standards of FRCP 9(b). *Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438 (8th Cir. 2013). FRCP 9(b) provides, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Under this standard, "[t]he plaintiff must plead such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Freitas*, 703 F.3d at 438 (internal quotations omitted). "In other words, [FRCP] 9(b) requires plaintiffs to plead 'the who, what, when, where, and how: the first paragraph of any newspaper story.'" *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011) (citing *Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007)).

**IV.     DISCUSSION**

Sherwin-Williams contends Defendants have failed to state a claim upon which relief can be granted with respect to each of their three counterclaims.

*A.     MMPA Claim*

The MMPA creates a private cause of action for

> [a]ny person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by [Missouri Revised Statute § 407.020.]

Mo. Rev. Stat. § 407.020; *Ward v. W. Cnty. Motor Co., Inc.*, 403 S.W.3d 82, 84 (Mo. 2013) (en banc). Sherwin-Williams asserts, *inter alia*, Defendants have failed to allege they purchased Sherwin-Williams merchandise "primarily for personal, family or household purposes." Mo. Rev. Stat. § 407.020. Defendants concede this fact in their Memorandum in Opposition to The Sherwin-Williams Companys [sic] Motion to Dismiss Defendants' Counter Claim [ECF No. 38]. Accordingly, the Court will dismiss the MMPA counterclaim with prejudice.

*B.     Fraudulent Misrepresentation*

To state a claim for fraudulent misrepresentation under Missouri law, Defendants must allege the following elements:

> (1) the claim is a false, material representation; (2) the speaker knows of its falsity; (3) the speaker intended that the statement should be acted upon by the hearer in a manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the statement; (5) the hearer's reliance on its truth, and the right to rely thereon; and (6) proximate cause.

*Verni v. Cleveland Chiropractic Coll.*, 212 S.W.3d 150, 154 (Mo. 2007) (en banc). "A failure to establish any one of the essential elements of fraud is fatal to recovery." *Id.* (quoting *Jungerman v. City of Raytown*, 925 S.W.2d 202, 204 (Mo. 1996) (en banc)).

Sherwin-Williams argues Defendants have failed to state a viable claim of fraudulent misrepresentation. Specifically, Sherwin-Williams claims (1) Defendants could not justifiably rely on a promise not to sue; (2) a representation of future expectation or prediction cannot constitute a fraudulent misrepresentation; and (3) Defendants have failed to particularly plead certain elements of a fraudulent misrepresentation claim.

### 1. *Justifiable Reliance*

First, Sherwin-Williams contends Defendants have failed to state a claim upon which relief can be granted, because they could not justifiably rely on the purported promise not to sue. Defendants respond that they could rely on a promise not to enforce the supply agreement, because they had a relationship of trust and confidence with Sherwin-Williams and Soaib.

Under Missouri law, a party who signs a contract presumably knows its contents and may not rely on the representations of the other party as to its legal effect. *Stein v. Stein Egg & Poultry Co.*, 606 S.W.2d 203, 205 (Mo. App. E.D. 1980); *Battlefield Cent., L.P. v. Nat'l City Corp.*, No. 4:08CV000625 JCH, 2008 WL 4790328, at *7 (E.D. Mo. Oct. 27, 2008), *aff'd sub nom. Battlefield Cent., L.P. v. Nat'l City Bank of Midwest*, 353 Fed. Appx. 61 (8th Cir. 2009). "Where a competent party has a reasonable opportunity to know about the contract by reading it, statements by the other party (that do not prevent reading) are not usually a basis to void assent to the whole contract." *State ex rel. PaineWebber, Inc. v. Voorhees*, 891 S.W.2d 126, 130 (Mo. 1995) (en banc). Only two exceptions to this rule exist: (1) where a relationship of trust and confidence exists between the parties, and (2) where one party possesses, or purports to possess, superior knowledge of the law and "takes advantage of the other party's ignorance of the law to mislead him." *Stein*, 606 S.W.2d at 205-06; *Battlefield Cent., L.P.*, 20008 WL 4790328, at *7. The first exception "is relevant only in

7

so far as it relates to the right to rely on the representation without investigation." *Stein*, 606 S.W.2d at 206.

The Court finds Defendants have failed to sufficiently allege justifiable reliance on the purported misrepresentation. Defendants state Soaib assured Novak that if Defendants "were not happy with the product or service provided, [Defendants] could cancel the [supply agreement] and they would not be sued[,] because they were considered 'a little guy[.]'" [ECF No. 23 at ¶ 35]. However, "[e]nforcement of the provisions of a contract cannot be defeated by a mere showing that the other party gave assurances that the same would not be binding or enforced." *Stein*, 606 S.W.2d at 207. Moreover, Defendants have failed to allege facts suggesting they had a relationship of trust and confidence with Soaib and Sherwin-Williams. Rather, the Counter Claim/Third Party Complaint merely states that Defendants "were entitled to rely on the statements made by [Sherwin-Williams and Soaib] based on their lengthy business relationship." [ECF No. 23 at ¶ 40]. This fails to amount to a relationship of trust or confidence that would eliminate the need to conduct independent investigation. *See Stein*, 606 S.W.2d at 206 (holding that no confidential or trust relationship existed where businessman and his nephew conducted business together); *Midwest Swim & Active, LLC v. McFall*, No. 05-0312-CV-W-FJG, 2006 WL 2808628, at *8 (W.D. Mo. Sept. 28, 2006) ("[S]imply because defendant knew Mr. Wiesner for many years does not mean that defendant had no obligation to read the documents he signed."). Additionally, Defendants have set forth no facts asserting Soaib or Sherwin-Williams took advantage of Defendants through use of superior legal knowledge. The Court therefore concludes that Defendants have failed to allege justifiable reliance.

## 2. *Representation of Future Expectations or Predictions*

Sherwin-Williams also claims Defendants have failed to sufficiently allege a material misrepresentation. Specifically, Sherwin-Williams asserts Soaib's purported promise not to sue constitutes a prediction for the future, and therefore fails to constitute fraudulent misrepresentation.

The Court does not agree that Defendants have failed to sufficiently allege a material misrepresentation. The Court acknowledges "[m]ere statements of opinion, expectations and predictions for the future are insufficient to authorize a recovery for fraudulent misrepresentation." *Watkins v. Gross*, 772 S.W.2d 22, 24 (Mo. App. E.D. 1989). However, Defendants have alleged more than a statement of general future predictions, such as whether a particular piece of property will accumulate in value over time. Rather, they have alleged a statement regarding Sherwin-Williams and Soaib's intent to not bring suit should Defendants cancel the supply agreement.[3] *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 133 (Mo. 2010) ("Vermeer's alleged statement that it would repair or redesign the machine is a statement of intent.") (en banc).

"Statements of present intent may be representations of fact which, if false, will support a fraudulent misrepresentation claim." *Kenley v. J.E. Jones Constr. Co.*, 870 S.W.2d 494, 497 (Mo. App. E.D. 1994). That said, "[a] promise to take future action is not actionable absent an allegation that the maker did not presently intend to perform." *Trotter's Corp. v. Ringleader Restaurants, Inc.*, 929 S.W.2d 935, 940 (Mo. App. E.D. 1996). Although Defendants have not made such an allegation with particularity, FRCP 9(b) allows general allegations when pleading "[m]alice, intent, knowledge, and other conditions of a person's mind" in a fraud case. The Court finds Defendants have met this

---

[3] Defendants contend Soaib's purported misrepresentation constitutes a present statement of fact, not a future statement of intent, because he was essentially guaranteeing Sherwin-Williams made a habit of not suing "the little guy." For reasons discussed in Section IV.C.1, *infra*, the Court disagrees.

9

standard by pleading the alleged promise not to sue, the falsity of the promise, and the knowledge of such falsity. [ECF No. 23 at ¶¶ 12, 35-37]. Accordingly, Defendants have sufficiently alleged a material misrepresentation, and the Court does not base its decision to dismiss the fraudulent misrepresentation claim on this particular element.

### 3. Particularity Pleading Standard of FRCP 9(b)

Finally, Sherwin-Williams asserts Defendants have not complied with FRCP 9(b), because they have failed to particularly plead the elements of reliance, falsity, proximate causation of injury, and knowledge of falsity or ignorance thereof. FRCP 9(b) dictates, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "'Circumstances' include such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995) (internal quotations omitted).

The Court has already concluded that Defendants failed to sufficiently allege justifiable reliance. Because failure of any one element is "fatal" to Defendants' claim, the Court need not address the particularity requirements of FRCP 9(b). *Verni*, 212 S.W.3d at 154. The Court notes, however, even if Defendants had alleged cognizable justifiable reliance, they have failed to sufficiently plead certain elements. For example, Defendants have not pleaded facts alleging the manner in which they relied. In fact, nowhere in the Counter Claim/Third Party Complaint do Defendants allege they entered into a supply agreement.[4] Nor do they otherwise state what they

---

[4]Even assuming the parties entered into a supply agreement, as evidenced by the original Complaint [ECF No. 1 at ¶ 7] and Answer [ECF No. 16 at ¶ 7], the Counter Claim/Third Party Complaint fails to state whether Soaib made the purported misrepresentation before or after the parties contracted. Although Defendants reference January 2012 as the time of misrepresentation, the Complaint and Answer state the parties contracted on or about January 1,

10

"obtained or g[ave] up" in reliance on Soaib's purported promise. Similarly, Defendants have not particularly pleaded facts alleging proximate causation of any injury. Although they state they "lost customers and revenue because of the actions of Sherwin-Williams and . . . Soiab [sic]," [ECF No. 23 at ¶ 27], they fail to explain how those purported losses relate back to the alleged misrepresentation.[5]

In sum, Defendants have failed to cognizably allege the element of justifiable reliance, and they have not met the particularity pleading standard of FRCP 9(b) regarding certain elements of their fraudulent misrepresentation claim. Accordingly, Defendants' fraudulent misrepresentation claim is dismissed without prejudice.

### C. *Negligent Misrepresentation*

To state a claim for negligent misrepresentation, Defendants must allege the following elements:

> (1) the speaker supplied information in the course of his business; (2) because of a failure by the speaker to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of a limited group of persons in a particular business transaction; (4) the listener justifiably relied on the information; and (5) due to the listener's justified reliance on the information, the listener suffered a pecuniary loss.

*Ryann Spencer Grp., Inc. v. Assurance Co. of Am.*, 275 S.W.3d 284, 288-89 (Mo. App. E.D. 2008). Thus, only two differences exist between fraudulent and negligent misrepresentation. *Kesselring*

---

2012. Accordingly, from the face of the pleadings, it is entirely possible that Soaib made the alleged promise *after* the parties contracted, precluding the possibility of reliance.

[5]The Court does not base its dismissal of the fraudulent misrepresentation claim on the elements of falsity or knowledge of falsity, because both of these elements relate to Sherwin-Williams and Soaib's state of mind. Specifically, to prove falsity, Defendants would have to establish that Soaib and Sherwin-Williams never intended to perform consistently with the alleged promise not to sue. *Trotter's Corp.*, 929 S.W.2d 935 at 940. FRCP 9(b) exempts "intent" from its heightened pleading standard. Similarly, Defendants need only generally allege the "knowledge" element of fraudulent misrepresentation. Fed. R. Civ. P. 9(b).

*v. St. Louis Grp., Inc.*, 74 S.W.3d 809, 813 (Mo. App. E.D. 2002). First, while fraudulent misrepresentation requires a person to knowingly or recklessly supply false information, negligent misrepresentation does not. *Id.* Second, "negligent misrepresentation requires that the information be supplied in the course of the defendant's business." *Id.*

Sherwin-Williams argues Defendants have failed to state a viable claim of negligent misrepresentation. Specifically, Sherwin-Williams claims (1) a negligent misrepresentation claim cannot arise from a statement regarding the speaker's future intent; (2) Defendants could not justifiably rely on the purported promise not to sue; and (3) Defendants have failed to plausibly plead reliance, falsity, consequent and proximately caused injury, and knowledge of falsity or ignorance thereof.

      *1.  Statement of Future Intent*

Sherwin-Williams contends Defendants have failed to state a claim upon which relief can be granted, because a negligent misrepresentation cannot be based on the speaker's future intent. The Court agrees with Sherwin-Williams that a statement of future intent cannot serve as the basis for a negligent misrepresentation claim. *See Comp & Soft, Inc. v. AT & T Corp.*, 252 S.W.3d 189, 197 (Mo. App. E.D. 2008); *Hoag v. McBride & Son Inv. Co., Inc.*, 967 S.W.2d 157, 174 (Mo. App. E.D. 1998) ("[I]t is impossible to be negligent in failing to ascertain the truth or falsity of one's own future intentions.").

Defendants contend, however, Soaib's alleged promise constitutes a present statement "when taken in context with [his] history with Sherwin-Williams that Sherwin-Williams did not sue 'the little guy.'" [ECF No. 38 at 9]. The Court understands this argument to mean the following: Soaib guaranteed that Sherwin-Williams customarily declined to sue "the little guy" – a statement of present fact, not a statement of intent. However, this construal simply ignores the plain language of

Defendants' Counter Claim/Third Party Complaint, which states, "[Sherwin-Williams] and [Soaib] stated . . . that if [Defendants] signed a new Supply Agreement . . . , [Defendants] could cancel the Agreement and they *would not be sued* because they were considered 'a little guy.'" [ECF No. 23 at ¶ 35 (emphasis added)]. The Court declines to reword the language of the Defendants' allegations in order to find a cognizable statement for the negligent misrepresentation claim.[6]  As alleged, Soaib's purported representation constitutes a statement of intent, and it does not qualify for a negligent misrepresentation claim.[7]

>  2. *Justifiable Reliance*

Sherwin-Williams argues Defendants could not have justifiably relied on Soaib's purported promise. The justifiable reliance element of negligent misrepresentation is identical to that of fraudulent misrepresentation. *See Massie v. Colvin*, 373 S.W.3d 469, 472 (Mo. App. S.D. 2012).

---

[6]Even if Defendants are correct in their construal, they have failed to adequately allege the falsity of Soaib's statement. That is, they have not alleged Sherwin-Williams *does* customarily sue "the little guy."

[7]Additionally, Defendants erroneously rely on *Vickers v. Progressive Cas. Ins. Co.*, 979 S.W.2d 200 (Mo. App. E.D. 1998). In *Vickers*, the plaintiffs alleged the defendant insurance company, through its agent, "represented personally to plaintiffs . . . that [it] would be settling their claims[.]" *Id.* at 204. After the plaintiffs relied on the agent's representations, they discovered the insurance company did not offer the type of liability coverage they required. *Id.* at 202. They contended the insurance agent negligently failed to investigate whether the insurance company would cover their injuries. *Id.* at 203.

*Vickers* is inapposite, because the issue before the court was not whether a statement of intent could serve as the basis for negligent misrepresentation. Rather, the issue was whether the insurance company owed the plaintiffs a duty of care. *Id.* Moreover, the agent's statements related not only to his intent, but also to his present ability to provide the requisite insurance coverage. *See id.* ("[P]laintiffs alleged that [the insurance company] was negligent in failing to properly investigate its coverage before representing to plaintiffs that it would cover their losses."); *see also MEMC Elec. Materials, Inc. v. Sunlight Grp., Inc.*, No. 4:08CV00535 FRB, 2008 WL 4642866, at *3 (E.D. Mo. Oct. 17, 2008) (citing *Vickers* for the proposition that "it cannot be said with certainty . . . that [the speaker's] assertions related only to its future intent and not its present ability."). In contrast, Soaib's alleged promise related only to his intent.

Thus, for the reasons stated in Section IV.B.1, *supra*, the Court finds Defendants have failed to cognizably allege justifiable reliance.

### 3.     *Plausibility Pleading Standard*

Finally, Sherwin-Williams avers Defendants have not plausibly pled facts to support reliance, falsity, causation, and knowledge of falsity or ignorance thereof.

The Court has already concluded Defendants have failed to sufficiently allege a cognizable statement of misrepresentation and justifiable reliance. Therefore, the Court need not address whether Defendants have met the plausibility pleading standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).[8] The Court notes, however, even if Defendants had adequately alleged a statement of misrepresentation and justifiable reliance, they have failed to plausibly plead certain elements. As previously discussed in Section IV.B.3, *supra*, Defendants have not provided a single indication on the face of the pleadings as to how they relied on the purported promise not to sue. Additionally, they have failed to set forth any facts explaining how the alleged representation caused their purported losses. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. In the instant case, Defendants have offered only conclusory allegations that the actions of Sherwin-Williams and Soaib met the justifiable reliance and causation elements of negligent misrepresentation.[9] Therefore, Defendants

---

[8]The parties do not dispute that the general pleading standard, not the heightened pleading standard of Rule 9(b) applies to claims of negligent misrepresentation. *See Mounger Const., LLC v. Fibervision Cable Servs., LLC*, No. 211:CV00081, 2012 WL 1745543, at *3 (E.D. Mo. May 16, 2012).

[9]Sherwin-Williams also asserts Defendants have failed to meet the pleading standard regarding falsity and knowledge of falsity or ignorance thereof. Liberally construing the Counter

14

have failed to meet the plausibility pleading standard with respect to justifiable reliance and causation.

In sum, Defendants have failed to cognizably allege a statement of misrepresentation and justifiable reliance.  Additionally, they have not met the plausibility standard set forth in *Ashcroft v. Iqbal*.  Thus, Defendants' negligent misrepresentation claim is dismissed without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff The Sherwin-Williams Company's Motion to Dismiss Defendants' Counterclaim [ECF No. 29] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Missouri Merchandising Practices Act claim is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the fraudulent misrepresentation claim is **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that the negligent misrepresentation claim is **DISMISSED WITHOUT PREJUDICE**.

Dated this  3rd  day of October, 2013.

  
_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE

---

Claim/Third Party Complaint in favor of Defendants, *Huggins v. FedEx Ground Package Syst., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010), the Court finds the pleadings satisfy those elements.  The Court does not base its decision to dismiss the negligent misrepresentation claim on failure to meet the pleading standard regarding those two elements.